Appeal of **FRANK F. NICOLA.**　　　　　　　Docket No. 805.

A contractual privilege to share in the profits resulting from a sale of real property is not such a property right as to entitle a taxpayer to deduct, as a " loss sustained from the sale or other disposition of property," the amount of the profits which he had hoped to realize had the contract continued in force and a sale been made.

Submitted January 22, 1925; decided January 31, 1925.

*F. S. Bright*, *Esq.*, for the taxpayer.
*R. A. Littleton*, *Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before GRAUPNER, LITTLETON, and SMITH.

This appeal involves a deficiency in income taxes for the year 1919 in the amount of $52,861.59. Oral and documentary evidence was introduced at the hearing, from which the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is an individual dealing in land, mortgages, stocks, and bonds at Pittsburgh, Pa. He deals in real estate on his own account, as well as in making purchases and sales for customers.

2. During the year 1902, the taxpayer took an option to purchase some property known as the Riter-Conley property, located on Short Street and running from First to Second Avenues in Pittsburgh,

for $200,000. He paid $2,000 to the Riter-Conley Manufacturing Co. on account of the option. Not being able to finance the purchase of the property from his own funds, the taxpayer applied to Henry C. Frick, who had joined him in previous transactions, to exercise the option under assignment. On or about June 2, 1903, Frick purchased the property and took title in his own name, paid the taxpayer the $2,000 which had been paid by him to bind the option, and the two men entered into an agreement, in which the taxpayer was designated as party of the first part and Frick was described as party of the second part. The important portions of the contract were as follows:

The second party will pay to the Riter-Conley Manufacturing Co. the purchase price for the property described in said agreement " Exhibit No. 1 " and will return to the first party the sum of two thousand dollars ($2,000) cash already paid by him therefor, the title to said property to be conveyed to and vested in the second party in fee simple.

The first party will, without any charge therefor, exercise his best efforts to sell said property in parts or as a whole at a reasonable advance over the cost of same, the terms and price to be mutually agreed to in writing by the parties hereto before any sale shall be made. If a profit is made upon said sale, the second party will immediately after receiving the purchase price from the vendee pay one-half of said profit to the first party; if a loss is made the first party shall immediately upon the conclusion of said sale pay to the second party one-half of the amount of said loss. In calculating the profit or loss the second party shall be reimbursed for the total cost of the property including taxes, water rents, insurance, attorney fees, cost or charges on sales, title insurance, and all expenses incurred in connection with the said property including interest at 6 per centum per annum on all sums expended. All moneys received from a sale or rental of all or any part of the property shall first be applied to the payment of the interest on the amounts expended by the second party and the balance shall be applied to the principal thereof.

The second party at any time before the termination of this contract, upon receiving payment of one-half of all the sums, and interest thereon, expended by him will convey to the first party the undivided one-half interest in said property.

If the property is not sold prior thereto this contract shall terminate on the first day of July, 1905, and a final settlement of profits or losses shall be made as follows: Between the first day and 10 o'clock a. m. on the fifth day of July, 1905, each party shall submit in writing to William McConway, of Pittsburgh, Pa., or in case of his inability or refusal to act, to John B. Jackson, of Pittsburgh, Pa., or in case of his inability or refusal to act, to John Bindley, of Pittsburgh, Pa., a single sealed bid for all the property which remains unsold. The said bids shall be opened at 10 o'clock a. m. on July 5th, 1905, and the higher bid shall be deemed the value of the property. If the first party makes the higher bid, the second party, after being fully reimbursed for all moneys paid, including interest as aforesaid, shall convey the property in fee simple to the first party upon payment to the second party of one-half the profit in case a profit is shown, or one-half the loss in case a loss is shown, after a calculation upon the terms above set forth. If the second party makes the higher bid, the title to the property shall continue to remain vested in him and he shall pay the first party one-half the profits in case a profit is shown and shall receive immediately from the first party one-half the loss in case a loss is shown as above stated. No second bid shall be permitted unless two bids shall be equal in amount, in which case other sealed bids shall be immediately submitted until one party makes a higher bid than the other, when the matter shall be immediately settled as above stated.

If the first party, prior to July 1st, 1905, shall have paid for and taken title to one-half of the property above stated, the bids shall be made for the property as a whole, and upon calculating the profit or loss, allowing each party six per centum interest on all sums expended, the lower bidder shall immediately convey his interest to the other party, who shall pay the cost thereof, including interest, as above, and the payment of one-half the profit or loss respectively shall immediately be made by or to the party taking the title.

3. This agreement was renewed from year to year until October 9, 1919, when it was cancelled by Frick without the property having been sold or the taxpayer having exercised any of his options under the contract. During the period from June 2, 1902, to October 9, 1919, the taxpayer had complete charge of the property, collecting the rents and transmitting them to Frick and endeavoring to find a purchaser for the property at a profitable figure.

4. On June 19, 1912, the taxpayer received an offer for the purchase of the property from the Union Storage Company of Pittsburgh in the amount of $600,000.00, to be paid in first-mortgage bonds. This offer was rejected by Frick and the taxpayer and was renewed on November 13, 1913, when it was again rejected.

5. The taxpayer contends that he had an equitable interest in the property in question under the contract set forth in paragraph 2 hereof; that such interest had a March 1, 1913, value of $112,564.06, and that the cancellation of the contract between Frick and him in 1919 caused a deductible loss of $112,564.06. In his income tax return for 1919, the taxpayer deducted the sum of $100,564.06 as a loss on the property, which the Commissioner disallowed. The disallowance of this item resulted in the deficiency appealed from. Taxpayer here asserts that the true amount should be $112,564.06; that the difference of $12,000 between this amount and the $100,564.06 deduction sought was a clerical error in making out the return, and that he should here be allowed, as a deduction, the full amount of $112,564.06. The taxpayer's method of computing the March 1, 1913, value, which he here seeks as a deduction, was as follows:

| | |
|---|---:|
| Value of property as indicated by the offers to purchase on June 19, 1912, and November 13, 1913 | $600,000.00 |
| Cost of property, plus taxes, etc | 374,871.88 |
| Profit which would have been realized had sale been made | 225,128.12 |
| Of which the taxpayer's share, under contract above set forth, would have been | 112,564.06 |

6. The letter determining the deficiency of $52,861.59 was mailed by the Commissioner to the taxpayer on September 27, 1924, and this appeal was filed November 25, 1924.

### DECISION.

The deficiency determined by the Commissioner is approved.

### OPINION.

GRAUPNER: The taxpayer alleges error on the part of the Commissioner in refusing to allow as a deduction for the year 1919 the asserted loss of $112,564.06, which he claims resulted from the termination of the contract by Frick. He relies upon section 202 (a) (1) of the Revenue Act of 1918 in support of his right to deduct the amount as a loss. But, before we can consider that right, we must determine whether or not he had "a loss sustained from the sale or other disposition of property" which would entitle him to claim such a right.

The taxpayer contends that he had an equitable interest or estate in the property, upon which he could place a value and on the deprivation of which he could claim a loss. But we must turn to the contract to find the character of the interest which the taxpayer had. The privileges which he held under the contract may be enumerated as follows:

(1) The right of sale as an agent, at a price which had to be satisfactory to Frick.

(2) The right to one-half the net profits from any sale, after Frick had deducted the cost of the property and all charges and expenses from the gross sales price.

(3) The liability for one-half of the gross losses sustained on a sale of the property.

(4) The right to purchase a one-half interest in the property.

(5) The right on the termination of the contract to bid to purchase all of the property remaining unsold.

This contract was terminable by Frick at the expiration of the period named in the original contract, or any period of renewal, without recourse of the taxpayer to law or equity. The taxpayer had nothing but a sales contract, on which he could legally enforce his right to a share of the profits in case of a sale by Frick, or an option to purchase which he at no time exercised. Frick could refuse to renew the contract at its expiration or on the expiration of any extension thereof without liability to the taxpayer. Taxpayer's interest was merely a hope or expectation of profits which were never realized and does not come within the definition of equitable interest, which defines " such an interest as a court of equity can pursue and appropriate to the discharge of debts; that which can be sustained or made effective or available in a court of equity." (20 C. J. 1303.)

Taxpayer's interest, such as it was, ran from year to year as Frick saw fit to renew it, and was subject to cancellation without equitable or legal relief, on the decision of Frick. This, as we view it, is not a property right on which a loss may be sustained within the contemplation of section 202 (a) of the Revenue Act of 1918. Nor was any " sale or other disposition " of the property made within the contemplation of that section. There was a lapse of expiration of interest, due to Frick exercising his contractual right, but that can not be called a " disposition " which may effect a loss within the meaning of the statute. The failure to receive anticipated profits can not be interpreted as such a loss as would entitle him to take the amount claimed as a deduction. Therefore, the taxpayer had no right to make a deduction.